**In re The MARRIAGE OF Donna Jean Worley HAYNES and Kevin Lester Worley.**

**Kevin Lester WORLEY, Appellant,**

v.

**Donna Jean HAYNES, Respondent.**

**No. 67443.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 19, 1995.

Latourette, Schlueter & Byrne, P.C., Elkin L. Kistner, St. Louis, for Appellant.

Knight, Ford, Wright, Atwill, Parshall & Baker, Mariam Decker & Susan Ford Robertson, Columbia, for Respondent.

KAROHL, Judge.

Kevin Worley (Father) appeals judgment terminating joint legal custody and granting sole legal custody to Donna Haynes (Mother); awarding legal expenses to Mother; denying his motion to grant physical custody to him. Father argues the court lacked grounds for the change from joint legal custody; the court erred in awarding legal fees because Mother had sufficient means to pay; the court erred in denying physical custody to him because Mother's environment is unstable while his is stable and nurturing and the child expressed a preference to live with him. We affirm.

Father and Mother divorced in March, 1989. The court awarded legal custody of the couple's child, K.W., born April 13, 1985, to both parents and physical custody to Mother. In April, 1994, Father moved to modify physical custody. Mother filed a cross motion seeking dissolution of joint legal custody, child support increase and legal fees.

Mother lives in Nixa, Missouri, with K.W., a younger child and her husband. Mother is a full-time homemaker. Father lives with his girlfriend in Montgomery City. Father works as a truck driver for his dad's business.

The court found:

Petitioner Kevin Worley has taken advantage of liberal visitation rights granted by the original Decree of Dissolution to intentionally and maliciously undermine the mother/son relationship between Respondent and the minor child, [K.W.].

The Court further finds that the in-chamber testimony of the minor child critical of Respondent was, in this Court's opinion, the result of a calculated effort on the part of Petitioner Kevin L. Worley to manipulate the thoughts and emotions of an impressionable child.

The Court further finds that it would be in the best interest of the minor child that legal custody as well as physical custody, be placed with the Respondent Donna J. Haynes subject to reasonable rights of visitation in Petitioner.

The Court further finds that the parties have been unable to agree on major issues concerning the minor child.

The standard of review in a court tried case is Rule 73.01(c) as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In his first point, Father appeals the court's award of sole legal custody to Mother. "[T]he preference for joint custody is one grounded in and validated by the more abiding public policy that in the given circumstances only that custody arrangement is appropriate that best serves the interests of the child. The adjudication of custody ...

begins and ends with that dominant consideration." *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App.1990). (Cites omitted). " 'Joint legal custody' means that the parents share the decision-making regarding the health, education and welfare of the child.... A commonality of beliefs concerning parental decisions and the parties' ability to cooperate and function as a parental unit are important considerations when determining the best interest of the child." *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo.App.E.D. 1993). Father argues the record supports no conclusion the parents' disagreements adversely affect their child and further if he loses legal custody, the child will not receive the medical treatment he needs. Father testified he scheduled ear surgery for their son more than a month before the surgery was to be performed in August, 1993. He testified he did not tell Mother until two or possibly three weeks prior to the surgery that he had scheduled surgery for their son. Father testified Mother had repeated a request to know when he was taking their son to a physician, but he had never complied with her requests. Mother testified she was on vacation in South Carolina when she heard about her son's second ear surgery. She phoned her son at his father's home. Her son said his dad wanted to speak to her. Father told Mother their son was scheduled for ear surgery. Mother testified Father told her on a Monday and the surgery was on a Wednesday. Mother first spoke to the physician the day before her son's surgery. Mother testified her son is afflicted with a disease which causes him to bleed freely. Mother testified her son's dentist had recommended orthodontic work and she had requested permission from Father as required by the divorce decree. However, Father has not responded. Mother testified a physician with whom she consulted opined K.W. was too young for the ear surgery and suggested temporary use of a hearing aide. Father refused to agree to son's wearing a hearing aide. Additional testimony by both parents confirmed an inability to agree on decisions regarding their son. Thus, the trial court did not err in dissolving joint legal custody based on inability of parents to cooperate and function as a parental unit in the best interest of their son. Point One denied.

■ In his second point, Father appeals the award of attorney's fees to Mother. Father argues under § 452.355.1 RSMo 1994 and *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo. App.S.D.1993), the court has authority to award attorney's fees only if it determined Mother lacked ability to pay her own fees. Father misstates the statute. Section 452.355.1 RSMo 1994 states in pertinent part: "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding ... and for attorney's fees." Thus, ability to pay is merely one of the relevant factors which the court may consider under the statute. Further, contrary to Father's claim, the court in *Nix* actually found "[f]actors other than financial resources also are to be taken into account, and how the factors balance will vary from case to case." *Id.* Father argues Mother's family income, primarily income of her present husband, is greater than twice Father's income and thus she has sufficient means to pay her legal expenses. His contention fails to consider three factors: first, Mother has no income as she is a full-time homemaker; second, Father's stated income does not reflect his receipt of free gas and vehicle insurance provided by his father's business; third, any possible contribution his live-in girlfriend may make to his household income. The court had authority to consider other relevant factors, and was not strictly limited to consideration of financial resources. Point Two denied.

■ Father's third point consists of three parts. First, he argues there was evidence Mother is not the appropriate parent to have custody of K.W. "The trial court was in a superior position to determine and evaluate the credibility, sincerity and character of all witnesses." *Jones v. Jones*, 902 S.W.2d 363, 365 (Mo.App.E.D.1995) (*quoting Cornell v. Cornell*, 809 S.W.2d 869, 873 (Mo.App.1991)). Mother testified regarding the stability of her home and family and her relationship with K.W. Although Father and K.W. pre-

sented testimony which conflicted, the trial court was in a superior position to evaluate credibility, character, and sincerity of Mother, Father, and K.W. The trial court did not err by accepting Mother's testimony and rejecting the testimony of Father and K.W.

In the second part of his third point, Father argues he is the better of the two parents and should have physical custody. He testified Mother's environment is unstable because of several moves associated with her husband's job. He claims his environment is stable and nurturing because he plans to remain in Montgomery City. When he first testified, Father could not recall whether he had been convicted of driving while intoxicated since the divorce, but admitted he had lost his license for one year. He later admitted DWI convictions, stating his DWI in 1994 was reduced down and he had not had one for three or four years prior to 1994. Mother testified in November, 1993, Father drove son to her house and when he brought K.W. to the door he reeked of alcohol and staggered and weaved as he stood on the front step. Father denied ever driving K.W. to Mother's under the influence of alcohol.

Regarding discipline, Father testified Mother whipped K.W. with a wooden spoon. Father's counsel admonished Father to be fair and Father testified Mother hit K.W. on the butt. Mother testified she had never slapped K.W., but had spanked him. She testified she had swatted her son three times on the rear with a wooden spoon and sent him to his room. Mother also "grounds" K.W. and deprives him of use of his favorite toy as a means of discipline. Weight and credibility of the conflicting evidence and testimony was a matter for the trial court. We find no error in denying Father's motion to transfer primary physical custody to him.

Finally, Father argues K.W. expressed his preference for living with his Father. K.W. made that request. However, the court found K.W. had been prepped on behalf of Father before appearing before the Judge. We find no evidence to support the court's finding that K.W. had been prepped. However,

[o]nce custody has been originally adjudicated, there is a presumption the parent with custody remains suitable.

\* \* \* \* \* \*

While the wishes of the child regarding his custody are taken into consideration, they are not controlling, as such an important decision "should not be allowed to turn upon the temporary whims or desires of a child."

*Richardson v. Richardson,* 892 S.W.2d 753 (Mo.App.E.D.1994). The court was not required to grant the wishes of a nine year-old. It did not err in denying Father's motion for transfer of primary custody to him from Mother. Point Three denied.

We affirm.

REINHARD, P.J., and CRANDALL, J., concur.